# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50319

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CESAR ARRNOLDO VALDEZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
June 16, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:03-CR-108-3

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

PER CURIAM:*

In 2004, a jury convicted appellant Cesar Arrnoldo Valdez ("Valdez"), along with his brother Hector Valdez ("Hector"), for their involvement in a drug conspiracy. Valdez was found guilty on one count of conspiracy to possess with intent to deliver 1,000 kilograms or more of marijuana and on two counts of aiding and abetting the possession with intent to deliver 100 kilograms or more of marijuana. At sentencing, Valdez was also held accountable for 80

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50319

kilograms of cocaine. Valdez appealed his sentence to this court in 2006. On appeal, we found that Valdez was not responsible for the cocaine, vacated his sentence and remanded the case to the district court for resentencing. *See United States v. Valdez*, 453 F.3d 252 (5th Cir. 2006).[1] Valdez later filed a request, agreed to by the Government, for a sentence reduction under 18 U.S.C. § 3582(c)(2), which the district court denied. Valdez appeals the denial of the motion, claiming that the district court based its decision on the clearly erroneous belief that Valdez's relevant conduct involved the trafficking of 80 kilograms of cocaine. We REVERSE and REMAND for resentencing.

## I.

Valdez and Hector were involved with a drug trafficking organization, which smuggled marijuana from Mexico into the United States by way of Texas. Hector was originally involved with the repackaging of the marijuana before it was sent to locations further inland in Texas and Oklahoma. Hector ceased his involvement in the conspiracy in June 2001 when his vehicle containing 60 kilograms of cocaine concealed in a marijuana bale was seized in a bust. *Valdez*, 453 F.3d at 265. Shortly thereafter, Valdez assumed a leadership role in the same organization. Specifically, Valdez organized the transportation of the marijuana from Del Rio, Texas, to locations further north. On one occasion, Valdez recruited one of the individuals working for him to falsify a document to fabricate a seizure of the marijuana shipment by police. *Valdez*, 453 F.3d at 263 n.16.

Valdez, Hector, and three other individuals were charged with aiding and abetting each other in the unlawful possession with intent to distribute marijuana. Hector was independently charged with two counts related to an

---

[1] The cocaine as relevant conduct was properly attributed to Valdez's brother and co-conspirator, Hector Valdez, and affirmed on appeal. *Valdez*, 453 F.3d at 268.

No. 16-50319

"offense [that] involved more than 5 kilograms of a mixture or substance containing a detectable amount of Cocaine."

Following a jury trial, Valdez was found guilty on Counts 1, 4, and 5: Count 1 concerns conspiracy to possess with intent to distribute marijuana, and Counts 4 and 5 concern aiding and abetting the possession with intent to distribute marijuana. The probation officer calculated a base offense level of 36 in the presentence report ("PSR"),[2] which was based on the officer's finding that Valdez was "responsible for smuggling 3,509 kilograms of marijuana and 80 kilograms of cocaine between January 2001 and October 2002." Factoring in an additional four-level increase based on Valdez's leadership role in the operation, combined with his Criminal History Category I, the probation officer recommended a Guidelines sentencing range of 292 to 365 months. The district court sentenced Valdez to a term of imprisonment toward the upper end of the Guidelines range: 360 months.

Valdez appealed to this court, challenging, in pertinent part, the district court's inclusion of the cocaine in calculating Valdez's sentence. *Valdez*, 453 F.3d at 264-66. We affirmed Valdez's conviction but vacated his sentence and remanded the case to the district court for resentencing.[3] *Id.* at 266. At resentencing, the district court amended the PSR "to reflect the order of the Fifth Circuit Court of Appeals that the cocaine was not reasonably foreseeable and that the defendant should not be held accountable for the weight of the cocaine involved in the conspiracy."[4] The amendments to the PSR resulted in

---

[2] The 2003 version of the Sentencing Guidelines were used to calculate Valdez's sentence.

[3] We affirmed Hector's conviction and sentence, which included 2,370 kilograms of marijuana and 80 kilograms of cocaine. *Valdez*, 453 F.3d at 268.

[4] The district court addressed the gravity of the police forgery incident in Valdez's resentencing hearing:

But I can't forget that part of your case involved having a dispatcher at the Austin Police Department draft a false report to try to make it look like the

3

a total offense level of 38 (which was reduced from 40), which yielded a Guidelines sentencing range of 235 to 293 months. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c) (U.S. SENTENCING COMM'N 2003). The district court then sentenced Valdez to 280 months of imprisonment. Valdez filed a 28 U.S.C. § 2255 motion, which was denied by the district court.

Valdez and the Government then jointly filed a motion under 18 U.S.C. § 3582(c)(2) to reduce Valdez's sentence in the light of Amendment 782 of the Guidelines.[5] If applied to Valdez's sentence, Amendment 782 would reduce the base offense level to 32 and his total offense level to 36. This reduction would yield a Guidelines range of 188 to 235 months. Both Valdez and the Government argued before the district court that a sentence of 224 months would "represent[ ] a comparable sentence under the amended guideline range."

After a brief hearing, the district court denied the joint motion for a sentence reduction.[6] As part of its reasoning, the district court stated the following:

---

[drug] loads had been taken down, that you basically caused a lot of people a lot of problems in this case. And you did that for a long period of time. And you are very lucky that you are in a criminal history category I, because that does not truly reflect the seriousness of the criminal conduct that you were engaged in.

[5] Amendment 782 "revises the guidelines applicable to drug trafficking offenses" and "reduces by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties . . . ." U.S. SENTENCING GUIDELINES MANUAL, SUPPLEMENT TO APPENDIX C, amend. 782, at 70 (U.S. Sentencing Comm'n 2016). The Amendment was made retroactively applicable to defendants who were sentenced for eligible offenses before its effective date of November 1, 2014, provided that the effective date of any order authorizing a sentence reduction is November 1, 2015, or later. *Id.* amend. 788, at 87; *see United States v. Chapple*, 847 F.3d 227, 230 (5th Cir. 2017); *United States v. Garza*, 623 F. App'x 211, 212 (5th Cir. 2015).

[6] Valdez submitted a memorandum to the district court prior to the hearing. The memo contained a comparison between the initial and amended Guidelines calculations, the parties' "Agreed Amended Sentence," and descriptions of the vocational programs in which Valdez became involved throughout his time serving his sentence. As part of this appeal,

No. 16-50319

This one's going to be a denial. This is one where they actually got a police dispatcher for forged reports. They were forging police reports to indicate that the drugs had been seized to cover up the situation. It actually led to a police dispatcher out of Austin to go to federal prison as well. And he actually testified at the trial.

This—this—he was in Austin receiving it from his brother, and the trial indicated that in this particular case, you had conduct of 3,500 kilograms of marijuana and 80 kilograms of cocaine.

The hearing transcript ends at this point, with no further statements from either party, and no objection by Valdez. The district court then issued a written order denying the motion for sentence reduction, but did not include any further explanation as to its reasoning. Valdez timely appealed.

II.

We review a district court's denial of a motion for sentence reduction under § 3582(c)(2) for abuse of discretion. *Chapple*, 847 F.3d at 229. The district court "abuses its discretion when the court makes an error of law or 'bases its decision on a clearly erroneous assessment of the evidence.'" *United States v. Larry*, 632 F.3d 933, 936 (5th Cir. 2011) (quoting *United States v. Lipscomb*, 299 F.3d 303, 338-39 (5th Cir. 2002)).

Any arguments not introduced to the district court, and instead raised for the first time on appeal, are reviewed for plain error. *United States v. Escalante-Reyes*, 689 F.3d 415, 418-19 (5th Cir. 2012) (en banc). Plain error review requires the appellant "[t]o demonstrate . . . a forfeited error that is clear or obvious and that affects his substantial rights." *United States v. Jones*, 596 F.3d 273, 276 (5th Cir. 2010) (citing *United States v. Olano*, 507 U.S. 725, 732-37 (1993)). These three characteristics form the first three prongs of plain

Valdez filed an unopposed motion to supplement the record with this memorandum. A panel of this court granted the motion on August 25, 2016.

error review. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Under the fourth prong, and in the event the first three prongs are satisfied, we "ha[ve] the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (emphasis in original) (quoting *Olano*, 507 U.S. at 736).

## III.

In challenging the district court's denial of the joint motion for a sentence reduction, Valdez argues that the court abused its discretion by basing its decision on a clearly erroneous belief that his relevant conduct involved the trafficking of 80 kilograms of cocaine. Because Valdez did not object to the district court's cocaine reference during the sentence reduction motion hearing, however, we apply plain error review.

In general, Section 3582(c)(2) provides a district court with discretion to modify the sentence of a defendant pursuant to the following:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, *the court may reduce the term of imprisonment*, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2) (emphasis added). As the Supreme Court articulated in *Dillon v. United States*, 560 U.S. 817, 826-27 (2010), "the statute . . . establishes a two-step inquiry": (1) "[a] court must . . . determine that a reduction is consistent with § 1B1.10," and, if so, (2) the court must determine whether such a reduction is "warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Id.* at 826.

No. 16-50319

Under § 1B1.10, the court does not establish a new sentence; instead, the court considers "the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. In turn, the court considers the applicable § 3553(a) factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed"; "the kinds of sentences available"; the sentences that the Guidelines establish for the "applicable category of offense committed by the applicable category of defendant"; and policy initiatives, avoidance of unwanted disparities between similarly situated defendants, and restitution. 18 U.S.C. § 3553(a)(1)-(7). In addition, under § 1B1.10, the court must consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment." U.S. SENTENCING GUIDELINES MANUAL § 1B1.10 cmt. 1(B)(ii)-(iii) (U.S. SENTENCING COMM'N 2014).

Here, both parties moved for the court to apply the amended Guidelines range to reduce Valdez's sentence from 280 months to 224 months. The district court was presented with evidence of Valdez's post-sentencing conduct, including multiple hours of vocational training and other classes. The court also considered a letter of reference from a senior Bureau of Prisons officer. Nevertheless, the district court denied the § 3582(c)(2) motion, remarking upon the seriousness of the conspiracy in which Valdez was involved, including the recruitment of a police dispatcher to forge documents and "conduct of 3,500 kilograms of marijuana and 80 kilograms of cocaine."

We begin our analysis by applying the first two prongs of plain error review: whether the district court committed an error, and whether the error was clear or obvious. *See Puckett*, 556 U.S. at 135. Here, the record supports

7

a finding that the district court clearly erred by referencing cocaine as part of the explanation for its denial of the § 3582(c)(2) sentence reduction motion. The court's word choice contributes to this finding: At the hearing, the court stated, "[I]n this particular case, *you* had conduct of 3,500 kilograms of marijuana and 80 kilograms of cocaine." (emphasis added).   Although the Government contends that the district court was describing the conspiracy as a whole rather than Valdez's conduct, the court's reference to "conduct of 3,500 kilograms of marijuana and 80 kilograms of cocaine" indicates that, during the time of imposing the sentence, the court could have considered the cocaine conduct to be attributable to Valdez.  The first part of the statement is accurate as to Valdez because he was sentenced on remand based on a conviction of trafficking *3,509 kilograms* of marijuana.  Hector, on the other hand, was charged with trafficking *2,370 kilograms* of marijuana in addition to 80 kilograms of cocaine. Thus, by referencing "3,500 kilograms of marijuana," the district court was apparently describing Valdez's individual relevant conduct. Moreover, with respect to Valdez, the district court was correct in identifying his total offense level as 38 and correctly noted that Valdez was stationed in Austin, "receiving [drugs] from his brother."  In particular, the district court emphasized Valdez's use of a police dispatcher to forge reports, an action which resulted in the police dispatcher's going to federal prison.  Because the district court correctly attributed these other factors to Valdez, it appears that the district court's "80 kilograms of cocaine" statement was also in reference to Valdez's relevant conduct.

Moreover, the statements made by the district court during Hector's § 3582(c)(2) hearing, which immediately followed Valdez's hearing, arguably support the notion that the district court misconstrued the relevant conduct of the two brothers.   In particular, the district court made the following statement: "[Hector's] relevant conduct was less than the brother.  Just so we

have that on the record, just so we know." This statement was accurate if the court were referring to the brothers' original PSRs, in which Valdez and Hector were each held accountable for trafficking 80 kilograms of cocaine, but Hector was held responsible for a smaller amount of marijuana than Valdez. After Valdez's resentencing, however, although he was held responsible for a larger amount of marijuana than Hector, Valdez was not held responsible for the cocaine. This context further supports a finding that the district court was considering the 80 kilograms of cocaine during Valdez's sentence reduction hearing, and thus clearly erred.

With respect to the third prong of the plain error review analysis, we hold that Valdez's substantial rights were affected by the district court's clear error. When reviewing a forfeited error that is clear, a court will generally hold that the error affected the appellant's substantial rights if the error affected the outcome of the district court proceedings. *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011). In the context of sentencing, we have held that the "outcome" that the "[defendant] must show to have been affected is his sentence." *United States v. John*, 597 F.3d 263, 284 (5th Cir. 2010). Thus, unless the record indicates that the defendant would have received an above-Guidelines sentence absent the district court's error, then the defendant's substantial rights were affected. *See id*. at 285.

Here, Valdez's sentence was 280 months, which was at the upper end of the Guidelines range of 235 to 293 months. The 280-month sentence was determined upon resentencing by the district court after this court vacated Valdez's 360-month sentence. The district court, therefore, has had two opportunities to sentence Valdez above the Guidelines range for his offense and criminal history score; it declined to do so both times. During Valdez's resentencing hearing, the district court explained that—although "3500 kilos, criminal history category I adequately reflect[ ] the seriousness of the conduct

that [Valdez was] engaged in"—"the advisory guidelines [were] adequate and that a fair and reasonable sentence [could] be achieved with a sentence selected from within the advisory range." As a result of the district court's denial of the joint sentence reduction motion, however, Valdez's sentence of 280 months was about 45 months above the amended Guidelines range. Because the record does not appear to indicate whether the district court would have let Valdez's above-Guidelines sentence stand absent its consideration of the 80 kilograms of cocaine, the court's error affected the outcome of the proceedings and, consequently, Valdez's substantial rights.

Because the district court has committed a forfeited error that was clear and that affected Valdez's substantial rights, we proceed to the fourth prong of plain error review. Under this prong, we determine whether to exercise our discretion to remedy the district court's plain error because the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736. We hold that the district court's consideration of relevant conduct that we held on direct appeal unattributable to Valdez, adversely affected the fairness of the judicial proceedings.

Two considerations support this conclusion. The first is the Government's apparent change in position from joining in the §3582(c)(2) motion before the district court to arguing for affirmance on appeal. We exercised our discretion in a recent case in which "the government joined in the motion for reduction but [on appeal] support[ed] its denial." *United States v. Torres*, 856 F.3d 1095, 1100 (5th Cir. 2017). The *Torres* panel deemed this 180-degree turn by the Government to "raise[ ] a question as to the 'fairness . . . of judicial proceedings' that [was] sufficiently serious" that the court "elect[ed] to exercise . . . discretion." *Id.* (citation omitted) (citing *Puckett*, 556 U.S. at 135). The second consideration is the disparity between Valdez's current sentence and the amended sentence. As mentioned above, Valdez had

been resentenced to a term of 280 months based on a Guidelines range of 235 to 293 months. Valdez's amended Guidelines range in the light of Amendment 782 was 188 to 235 months. Accordingly, Valdez and the Government jointly moved to reduce his sentence to a length falling at the upper end of this amended range: 224 months. The difference, therefore, between Valdez's current sentence and the amended range for which he was eligible is 45 months. This significant disparity likewise supports the conclusion that the fairness of the proceedings is at issue by the district court's plain error. Further, we have opted to exercise our discretion in other sentencing cases when similarly significant disparities in sentence length were present.[7]

A sizeable disparity between the correct sentencing range and the erroneous sentencing range does not automatically warrant vacatur of a sentence on the fourth prong of plain error review, however. In *United States v. Wikkerink*, 841 F.3d 327, 338-39 (5th Cir. 2016), for example, we chose not to exercise our discretion to remedy a sentencing error that resulted in a very large disparity: the erroneous Guidelines range was 180–210 months, and the correct Guidelines range was 70–87 months. *Id.* at 336-337. Nevertheless, *Wikkerink* is distinguishable from this case. In *Wikkerink*, the district court expressed that it found the defendant's child pornography offense to be "quite troubling" and sentenced Wikkerink to a term of imprisonment well above the recommended sentencing range: 360 months. *Id.* at 331, 339. In this case, although the district court repeatedly remarked upon the seriousness of the conduct involving the recruitment of the police dispatcher, the court sentenced

---

[7] *See, e.g.*, *United States v. Hernandez*, 690 F.3d 613, 622 (5th Cir. 2012) (12 months); *Mudekunye*, 646 F.3d at 291 (19 months); *John*, 597 F.3d at 288-89 (21 months).

Note that, even though the aforementioned cases dealt with a defendant's initial sentencing, they are relevant to the extent that—in each case—the district court's misapplication of the Sentencing Guidelines warranted our exercise of discretion to remedy the error on plain error review. *See Torres*, 856 F.3d at 1100 n.16.

No. 16-50319

Valdez—both initially and on remand from this court—to a term within the Guidelines range because it found the term to be "fair and reasonable."

Thus, because the district court committed plain error when it considered conduct that was not attributable to Valdez in denying the parties' joint § 3582(c)(2) motion, and because the error affected Valdez's substantial rights, we hold that it also adversely affected the "fairness, integrity or public reputation of judicial proceedings."

IV.

In sum, we REVERSE the district court's denial of the joint motion for reduction of sentence and REMAND the case to the district court. In doing so, however, we offer no comment as to whether the benefit of Amendment 782 should be applied to reduce Valdez's sentence. We only hold that a reduction should not be denied on the basis of the cocaine as a component of Valdez's relevant conduct.